Jessica C. SMITH–HAYNIE, Appellant,

v.

DISTRICT OF COLUMBIA and
Addison Davis, Appellees.

No. 96–7149.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 4, 1998.
Decided Sept. 22, 1998.

JePhunneh Lawrence argued the cause and filed the briefs for appellant.

Sheila Kaplan, Assistant Corporation Counsel, argued the cause for appellees. Jo Anne Robinson, Interim Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Martin B. White, Assistant Corporation Counsel, were on the brief. Charles

F.C. Ruff, White House Counsel, entered an appearance.

Before: WALD, SENTELLE and TATEL, Circuit Judges.

WALD, Circuit Judge:

Jessica Smith–Haynie, an African–American woman, began working for the Firearms Identification Branch of the District of Columbia Metropolitan Police Department ("M.P.D.") as a civilian "Firearms Technician Trainee" in 1984. According to Smith–Haynie's complaint, she was harassed and discriminated against because of her race and gender virtually from the start. She identifies her supervisor, George Wilson, as the chief offender. She also alleges that defendant Addison Davis, the M.P.D.'s Equal Employment Opportunity Commission ("EEOC") officer, harassed her from 1988, when she first filed a discrimination complaint, through 1992, when she took maternity leave. Smith–Haynie filed a second complaint with the EEOC in 1992, charging Davis with harassment and retaliation for the earlier complaint. She states that she has not returned to her job since her maternity leave because of continuing problems with anxiety and work-related phobias.

Smith–Haynie received a right-to-sue letter from the EEOC on October 18, 1995. She filed her complaint in district court on January 18, 1996, charging the M.P.D. and Davis with violations of Title VII, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). Unfortunately for Smith–Haynie, she filed her suit 92 days after she received the letter—two days outside of the statutory period for filing suit under Title VII. Before filing an answer, defendants moved under FED. R. CIV. P.

12(b)(6) to dismiss or, in the alternative, for summary judgment. The district court treated the motion as one for summary judgment and ruled for defendants on all counts.[1] *Smith–Haynie v. District of Columbia et al.,* Civ. No. 96–0064 (D.D.C. May 10, 1996). Smith–Haynie appealed. Her arguments boil down to two: first, that defendants impermissibly raised the affirmative defense of untimeliness by dispositive motion before filing an answer under FED. R. CIV. P. 8(c);[2] and second, that ongoing and severe harassment rendered her *non compos mentis* during the limitations period and should result in either equitable tolling of the time limit or equitable estoppel of its operation.

We conclude that an affirmative defense can be properly raised in a pre-answer motion, and further, that Smith–Haynie did not produce adequate support for her *non compos mentis* argument. We therefore affirm the district court's grant of summary judgment.

## I.

■ We decide *de novo* the legal question of whether the affirmative defense of statutory limitation can be raised in a pre-answer motion under the proper construction of Rules 12(b) and 8(c). *See Harris v. Secretary, U.S. Dep't of Veterans Affairs,* 126 F.3d 339, 342 (D.C.Cir.1997). In *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 360 (D.C.Cir.1982), we said that a statute of limitations defense under Title VII is an affirmative defense that is properly raised by dispositive motion under Rule 12(b)(6). *Gordon* did not, of course, address the precise situation involved in this case, whether defendants can raise an affirmative defense by filing a dispositive motion *before* they file an answer. Recently, we decided in *Harris* that

---

1. Since Smith–Haynie failed to contest defendants' allegation that the most recent offense occurred in or before 1992, the district court dismissed the sections 1981 and 1983 and Equal Pay Act claims as barred by the applicable statutes of limitations. *See Hobson v. Wilson,* 737 F.2d 1, 32 (D.C.Cir.1984) (three year statute of limitations in the District of Columbia for sections 1981 and 1983); 29 U.S.C. § 255(a) (three year statute of limitations for willful violations of the Equal Pay Act). This was not an abuse of discretion and dismissal of these claims will be

upheld. *See CSX Transportation, Inc. v. Commercial Union Ins. Co.,* 82 F.3d 478, 482 (D.C.Cir. 1996).

2. The appeal of this case was held in abeyance pending the outcome of *Harris v. Secretary, U.S. Dep't of Veterans Affairs,* 126 F.3d 339 (D.C.Cir. 1997). Smith–Haynie then moved for summary reversal and remand based on *Harris.* The motion was denied and the issue referred to the merits panel.

an affirmative defense is forfeited if it is not raised in the answer and the answer is the first responsive pleading in the case. *Harris* used sweeping language: "In order to preserve the notice purpose of Rule 8(c) . . . , we hold that Rule 8(c) means what it says: a party must first raise its affirmative defenses in a responsive pleading before it can raise them in a dispositive motion." *Harris,* 126 F.3d at 345.

■ However, this broad prohibition must be read in context. The precise holding of *Harris* is that an affirmative defense not raised by answer cannot be raised in dispositive motions that are filed post-answer. The defendant in *Harris* had filed its answer to the complaint, as well as answers to two amended complaints, and each time had failed to plead untimeliness as an affirmative defense. Since "[f]ailure to raise an affirmative defense in pleadings deprives the opposing party of precisely the notice that would enable it to dispute the crucial issues of the case on equal terms," *id.* at 343, a defendant forfeits an affirmative defense that is not pleaded in its answer or amended answer. In *Harris,* we cited with approval *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir.1976), which adopted the majority view that unpled affirmative defenses cannot be raised by dispositive motion unless that motion is the first responsive pleading. *See Harris,* 126 F.3d at 345; *see also* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1277 (2d ed.1990 & 1997 supp.). Courts that have adopted this majority rule, however, have also reasoned that since a plaintiff's complaint necessarily includes certain facts about an alleged offense, such as dates, the plaintiff does not suffer from lack of notice when a defendant bases a pre-answer motion on the facts as alleged in the complaint. *See, e.g., Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir.1989); *Conerly v. Westinghouse Electric Corp.,* 623 F.2d 117, 119 (9th Cir.1980);

*Wilburn v. Pepsi–Cola Bottling Co.,* 492 F.2d 1288, 1289 (8th Cir.1974); *White v. Padgett,* 475 F.2d 79, 82 (5th Cir.1973); *Williams v. Murdoch,* 330 F.2d 745, 749 (3d Cir.1964); *Rohner v. Union Pacific R.R. Co.,* 225 F.2d 272, 274 (10th Cir.1955); *Kincheloe v. Farmer,* 214 F.2d 604, 605 (7th Cir.1954).

■ We find this reasoning to be sound and not in conflict with *Harris. See Stanton v. District of Columbia Court of Appeals,* 127 F.3d 72, 76–77 (D.C.Cir.1997) (acknowledging that an affirmative defense can be raised by pre-answer motion) (citing *Harris* ). Accordingly, we now explicitly hold that an affirmative defense may be raised by pre-answer motion under Rule 12(b) when the facts that give rise to the defense are clear from the face of the complaint.

■ This case fits the paradigm. Plaintiff states in her complaint that she received her right-to-sue letter 92 days before she filed suit.[3] The facts supporting defendants' dispositive motion were apparent to Smith–Haynie from the inception of her lawsuit. Defendants properly raised the untimeliness defense by a pre-answer motion under Rule 12(b)(6).

## II.

■ Turning next to the merits of defendants' untimeliness defense, we review the district court's grant of summary judgment *de novo.*[4] *See, e.g., Goldman v. Bequai,* 19 F.3d 666 (D.C.Cir.1994).

■ Smith–Haynie interposes the threshold argument that the availability of equitable doctrines is a question for the jury and not for the judge when they involve disputed issues of material fact. Generally speaking, questions sounding in equity are for a judge to decide. *See generally Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). But this

---

3. Title VII plaintiffs need not include the date of receipt of a right-to-sue letter in their complaints. In the event that a date is not pleaded, the Supreme Court has applied the "3–day" rule of FED. R. CIV. P. 6(e) to presume that the letter is received three days after it is mailed. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 148 & n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam).

4. We use the *de novo* standard despite the fact that the doctrine of equitable tolling ordinarily involves discretion on the trial judge's part. We read the judge's decision here to be based upon her finding that as a matter of law Smith–Haynie's evidence could not support invocation of the equitable tolling doctrine based upon her mental state.

principle is sometimes muddled in the statute of limitations context. The discovery rule, a legal doctrine which governs when a limitations period begins to run in certain situations, is presumably for a jury to consider when issues of disputed fact surround the rule's application; equitable tolling and estoppel, which ask whether equity requires extending a limitations period, are for the judge to apply, using her discretion, regardless of the presence of a factual dispute. However, the "discovery rule" and "equitable tolling" are often treated as the same doctrine, leading courts to the tenuous conclusion that disputed issues of fact regarding *both* are for the jury to resolve. *Compare Goldman*, 19 F.3d at 671–72, *with Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir.1994) *and Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990). The province of the judge versus that of the jury does not need to be decided today, because even if we were to treat this as a jury question, we would conclude that Smith–Haynie failed to present sufficient proof to send the issue to a jury.

Summary judgment may be granted only if there remain no genuine issues of material fact, accepting all evidence offered by the nonmoving party as presumptively valid and drawing all justifiable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To avoid summary judgment, Smith–Haynie must show the existence of evidence sufficient to permit a reasonable conclusion that the statute of limitations should have been equitably tolled. In opposition to the motion for summary judgment, Smith–Haynie filed an affidavit in which she alleged that she was too distraught to grasp the meaning of the 90–day limitations period. At oral argument, her lawyer argued that he could have gathered more supporting material to prove her poor mental state but the case was dismissed before he was able to conduct discovery and obtain a psychological examination. Of course, Smith–Haynie could have

moved the district court under FED. R. CIV. P. 56(f) for discovery, but no such motion was made in this case. We are left with her affidavit, and standing alone, it does not support a claim for equitable tolling or for equitable estoppel.

▉ First, Smith–Haynie argues that the 90–day limitation period should be tolled because she was *non compos mentis* during that period. Defendants do not dispute that the 90–day period is not a jurisdictional prerequisite to filing suit in federal district court but operates as a statute of limitations and is subject to waiver and equitable tolling. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam); *Gordon*, 675 F.2d at 360; *cf. Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (Title VII's time limits for filing suit against the government subject to waiver and equitable considerations). Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim. *See Cada*, 920 F.2d at 451. Using District of Columbia law as a touchstone, *see Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir.1996) (relying on state and federal interpretations of state *non compos mentis* laws to determine scope of equitable tolling of Rehabilitation Act claim); *Nunnally v. MacCausland*, 996 F.2d 1, 5 (1st Cir.1993) (per curiam) (analogizing to state standards to determine incompetence for purposes of tolling of Rehabilitation Act limitation period); *Kien v. United States*, 749 F.Supp. 286 (D.D.C.1990) (same); *Speiser v. Department of Health and Human Services*, 670 F.Supp. 380 (D.D.C.1986) (same), *aff'd without opinion*, 818 F.2d 95 (1987),[5] the doctrine can fairly be read to encompass cases where a plaintiff has been unable to obtain such information because of disability.

▉ Smith–Haynie's hurdle is high. "The court's equitable power to toll the stat-

5. This court has consistently applied federal courts' interpretations of typical equitable tolling and equitable estoppel doctrines in Title VII discrimination cases. *See, e.g., Bowden v. United States*, 106 F.3d 433 (D.C.Cir.1997); *Mondy v. Secretary of the Army*, 845 F.2d 1051 (D.C.Cir. 1988); *cf. Bull S.A. v. Comer*, 55 F.3d 678 (D.C.Cir.1995) (equitable tolling of patent deadlines). This does not, of course, preclude the use of District of Columbia law to distill basic common law principles. *See* 19 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, § 4514, at 474–76.

ute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988). District of Columbia law provides that a person who is *non compos mentis* and who has failed to file a legal action in a timely fashion may bring the action "within the time limited after the disability is removed." D.C.CODE § 12–302. The code does not itself define *non compos mentis,* but "[t]he phrase '*non compos mentis* ... generally refers to someone incapable of handling her own affairs or unable to function [in] society.'" *Hendel v. World Plan Executive Council et al.,* 705 A.2d 656, 665 (D.C.1997) (quoting *Speiser,* 670 F.Supp. at 384). " 'Impaired judgment alone is not enough to toll the statute of limitations.'" *Id.* (quoting *Speiser,* 670 F.Supp. at 384). The disability of a person claiming to be *non compos mentis* must be "of such a nature as to show [she] is unable to manage [her] business affairs or estate, or to comprehend [her] legal rights or liabilities." *Decker v. Fink,* 47 Md.App. 202, 422 A.2d 389, 392 (Md.1980).

Smith–Haynie swore in her affidavit that she was confused by her right-to-sue letter because the EEOC had apparently dismissed some of her charges as untimely. She also related that "[w]hen I received the unrequested notice of right to sue and dismissal, I did not understand it and I was further traumatized and simply unable to psychologically deal with it." Her statement that she did not understand the letter is a general and conclusory one. She does not contest that she was informed in the letter of the 90–day limitations period or aver that the meaning of the time limit was unclear to her. Her supplementary affidavit does describe emotional difficulty, but of a kind that was basically related to the work environment. Smith–Haynie was unable to go to work, afraid of Addison Davis, and "uncomfortable, humiliated and degraded in [her] work environment." She does not tell us that she was "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel," *Nunnally,* 996 F.2d at 5, nor does she provide information to support an inference that she was "*in fact* prevent[ed] ... from managing [her]

affairs....," *Miller,* 77 F.3d at 191; *see also Lawson v. Glover,* 957 F.2d 801, 804–06 (11th Cir.1987) (state court interpretation of similar Georgia Code provision requires showing that plaintiff was "physically and mentally incapacitated and was incompetent to manage his own affairs"). It may be that a doctor's diagnosis would have strengthened her claim, *see Nunnally,* 996 F.2d at 5–6 (diagnosis of schizophrenia supported claim of *non compos mentis* ); *but see Miller,* 77 F.3d at 192 ("Most mental illnesses today are treatable by drugs that restore the patient to at least a reasonable approximation of normal mentation and behavior."); *Speiser,* 670 F.Supp. at 385 (while hospitalized plaintiff "has brought forth evidence to the effect that she was preoccupied, depressed, and obsessed with events surrounding her resignation, she has not shown that she was ever adjudged incompetent, signed a power of attorney, had a guardian or caretaker appointed, or otherwise ... let someone else handle her affairs ...."), however, no such diagnosis or report was submitted to the district court. Moreover, plaintiff does not explain what happened between the 90th and the 91st day after she received her letter, when she had the presence of mind to consult a lawyer. We must conclude that plaintiff's affidavit does not yield a reasonable inference that she was incapable of handling her own affairs and functioning in society.

Smith–Haynie also argues that equitable estoppel should operate to prevent defendants from asserting untimeliness. Equitable estoppel in the statute of limitations context "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Cada,* 920 F.2d at 450–51 (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). More specifically, tolling on estoppel grounds is proper where " 'a claimant has received inadequate notice, ... where the court has led the plaintiff to believe that she had done everything required of her, ... [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.'" *Mondy,* 845 F.2d at 1057 (quoting *Baldwin County Welcome Ctr.,* 466 U.S. at 151, 104 S.Ct. 1723). The argument that she was either lulled or scared into

inaction has little force in Smith–Haynie's case. She states in her affidavit that she "felt pressured to endure [Davis'] sexual harassment because [he] was ultimately responsible for processing [her] EEO complaints and he had the authority to remedy [her] pay act claims and or [sic] terminate [her] job." As part of her retaliation claim, Smith–Haynie alleges in her complaint that Davis told her that he controlled the disposition of plaintiff's claims. However, nowhere does she claim that anything the defendants did or said misled her as to the effect of the 90–day limitation period on her right to seek judicial relief. *See Dougherty v. Barry*, 869 F.2d 605, 613 (D.C.Cir.1989) (equitable estoppel unavailable to plaintiffs who were " 'unambiguous[ly]' notified that they must sue within ninety days of the EEOC's dismissal of the charge") (citing *Baldwin County Welcome Ctr.*, 466 U.S. at 151, 104 S.Ct. 1723).

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment and dismissal of appellant's claims are affirmed.

*So ordered.*