**Darin T. STEELE, Plaintiff,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Defendant.**

Civil No. 1:96CV00728.

United States District Court,
M.D. North Carolina,
Durham Division.

Jan. 21, 1998.

Jennifer Van Zant, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, for Plaintiff.

Darin T. Steele, Durham, NC, pro se.

Gill P. Beck, Office of U.S. Atty., Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

Plaintiff Darin T. Steele filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging racial discrimination, harassment, and reprisal by his former employer, the Veterans' Administration ("VA" or "Defendant"). The case is now before the court on Defendant's motion for summary judgment. Because Plaintiff failed to file this lawsuit within the time period required after final agency action, the court will grant summary judgment for Defendant and dismiss all claims.

### STATEMENT OF FACTS

Plaintiff began working for the Durham VA Medical Center in March 1992. He had previously served in the United States Navy, until a medical board found him unfit for duty and discharged him with a ten per cent (10%) disability rating based on hearing loss, conversion reaction,[1] and anxiety disorder. (Steele Dep. 8–12 & Ex. 2). His disability due to hearing loss and conversion disorder later increased to thirty per cent (30%) in 1993. (Steele Decl. ¶ 4).

At the Durham VA, Plaintiff worked as a nursing assistant in the escort program. His duties consisted of transporting patients and

---

1. Conversion is the process by which emotions become transformed into physical, motor, or sensory manifestations. *See Dorland's Illustrated Medical Dictionary* 303 (26th ed.1985).

laboratory specimens. (Steele Dep. 13). In 1993, Plaintiff began to believe that he was being discriminated against by the VA. On October 20 and 26, 1993, Plaintiff made a complaint of discrimination to the EEO counselor. (Steele Dep. 18–19, 37–38, 49, 58–60 & Exs. 18 & 19). An EEO counselor advised Plaintiff of his right to file a formal complaint on November 17, 1993. (Steele Dep. 18–19 & Ex. 4). The counselor briefed Plaintiff on the procedural requirements involved in his complaint, and Plaintiff signed a notice of EEO complainant's rights and responsibilities form that stated the applicable filing deadlines. (Steele Dep. 57, 67–68 & Ex. 21).

Plaintiff proceeded to file a complaint of employment discrimination with the VA on November 29, 1993. While this claim was pending, Plaintiff pursued an increase in his disability rating. In February 1994, his rating was increased from thirty to forty per cent (40%) due to his migraine headaches. (Steele Decl. ¶ 17). The VA made an offer of full relief on his discrimination claim on April 11, 1994. (Steele Dep. 64–65 & Ex. 24). Plaintiff refused this offer and expressed his intention to take the matter to court. (*Id.* at 65).

Plaintiff did not, however, pursue the matter. Plaintiff claims that some time in April or May 1994 he attempted to commit suicide by taking an overdose of medication. (Steele Decl. ¶ 18). From June 13–20, 1994, Plaintiff was unable to work due to depression. (*Id.* at ¶ 19). He began receiving treatment for his depression that month, which included a prescription for Prozac. Plaintiff claims that since June 1994 he has suffered from migraine headaches, depression, poor sleep, anxiety, low energy, and an inability to concentrate. He also claims to have experienced crying spells, paranoia, sadness, and panic. (*Id.* ¶ 20).

On July 15, 1994, the Office of the General Counsel, Department of Veterans Affairs, sent Plaintiff a letter constituting the final agency decision dismissing Plaintiff's EEO complaint. The letter again informed Plaintiff of the applicable limitations period:

You also have the right to file a civil action in an appropriate district court. If you choose to file a civil action, you may do so

—within 90 days of receipt of this final decision *if no appeal to the EEOC has been filed.* . . .

Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action *MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS* of the date you receive this final agency decision.

(Joint Stipulation of Facts, Ex. 1) (emphasis in original). Plaintiff received this letter on July 18, 1994. (*Id.* ¶ 1).

After receiving this letter, Plaintiff made several incomplete attempts to file his civil action. First, he unsuccessfully attempted to secure legal representation. (Steele Dep. 73, 75). In July 1994, he requested from the district clerk's office an application for leave to proceed *in forma pauperis.* Although he partially completed these forms, he never returned them to the Clerk. (Joint Stipulation of Facts, ¶ 3 & Ex. 2). Plaintiff explained in his deposition that he did not file a complaint because he planned simply to apply for Social Security and leave the VA. Plaintiff asserts that his disorder clouded his thinking and prevented him from thinking logically enough to finish the documents. (Steele Decl. ¶ 23). Plaintiff claims that this disorder has disabled him since 1994. (Steele Dep. at 85).

In contrast to Plaintiff's post-hoc opinion that he was totally disabled, the undisputed evidence shows that from July 1994 until June 30, 1995, Plaintiff was able to manage his affairs and function within society. During this period, Plaintiff worked approximately forty (40) hours per week (*id.* at 82, 88), made his house payments (*id.* at 81), attended some college classes (*id.* at 82–83, 95),[2] supported himself (*id.* at 84, 88), paid his bills (*id.* at 106), applied for Social Security (*id.* at 87), applied for disability retirement (Gov't's Ex. C), requested schedule changes to accommodate his college courses (Steele Dep. 96–97 & Exs. 31–33), applied for insurance (Steele Dep. 108–09), took care of finan-

---

2. Plaintiff asserts that he was not able to complete his college classes because he could not

focus in class, was unable to sit still, and began to see visions. (Steele Decl. ¶ 25).

cial matters for his girlfriend (*id.* at 115), and sought medical treatment for his disability. (Steele Decl. ¶¶ 20 & 27).

In April 1995, Plaintiff again requested forms from the district clerk's office in order to file his complaint. He received these forms and began to fill them out, but again failed to file them with the court. (Joint Stipulation ¶ 6 & Ex. 4).

In June 1995, Plaintiff was diagnosed with depression. On June 30, Plaintiff suffered what he called "a nervous breakdown" and left work. He was hospitalized with an adjustment disorder from July 12, 1995, to August 2, 1995. (Steele Decl. ¶ 28). Plaintiff was hospitalized again from August 19, 1995, to September 8, 1995, at which time his diagnosis was changed to schizo-affective disorder with depression and anxiety. *Id.* ¶ 3.[3] Because Plaintiff was seeing visions and hearing voices, he was placed on the sedative Moban. *Id.*

On September 21, 1995, Plaintiff mailed a letter to the United States District Court, stating:

> I Darin T. Steele strongly feel that I should take civil action in this case. I have tried to forget about, what happened to me at the VA Hospital in Durham, NC.... I first decided to take civil action on July 26, 1994, but I could not pay legal fees and the costs of court. Now I am able to pay lawyers fees and the cost of court.
>
> I understand that time has elapsed and no appeal to the E.E.O.C. was filed by me within 90 days, so the settlement denied by the EEOC became final. Judge, [p]lease overrule this decision by the EEOC. I must take civil action in this case.

(Joint Stipulation of Facts ¶ 7 & Ex. 5). Plaintiff still did not file a complaint, however, because he did not feel "stable enough." (Steele Dep. 81). Rather, he chose to focus on personal matters such as bringing his mortgage current. (*Id.* at 80).

In December 1995 Plaintiff was determined to be 100 per cent disabled due to his schizo-affective disorder. (Steele Decl. ¶ 37). He retired from the VA effective November 11, 1995. Nevertheless, Plaintiff did not attempt to file his complaint for another nine months. On August 7, 1996, Plaintiff wrote a letter to the district clerk, stating: "I Darin T. Steele strongly feel that this case must be heard. My concern is the U.S. Civil Statute of Limitations on this case. I tried to file this case in July of 1994 and was unable to pay the filing fee and various other reasons." (Joint Stipulation ¶ 8 & Ex. 6). Plaintiff finally filed his complaint on August 27, 1996. The district court subsequently granted Plaintiff's motion for appointment of counsel.

## DISCUSSION

A civil action brought by a federal employee under Title VII must be filed "[w]ithin ninety days of receipt of notice of final agency action taken by a ... [federal] agency...." 42 U.S.C. § 2000e–16(c). Plaintiff filed this complaint on August 27, 1996, almost two years after the ninety-day filing period had lapsed. Plaintiff argues that his disability prevented him from thinking clearly enough to act on his rights and file a complaint, and therefore equitable tolling is appropriate.

The time limit imposed by Title VII can be equitably tolled against the United States. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Some courts have in fact found that mental disability constitutes a valid reason for tolling the statute of limitations in cases based on federal law. *See Nunnally v. MacCausland*, 996 F.2d 1 (1st Cir.1993); *Llewellyn v. Celanese Corp.*, 693 F.Supp. 369 (W.D.N.C.1988); and *Moody v. Bayliner Marine Corp.*, 664 F.Supp. 232 (E.D.N.C.1987). In order for the Title VII filing period to be equitably tolled by reason of a plaintiff's mental disability, the plaintiff generally must plead and prove that (1) his mental condition prevented him from filing during the specified period, and (2) this condition existed for a majority of the filing period. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451, 453 (7th Cir.1990), cert. denied, 501 U.S. 1261, 111 S.Ct. 2916,

---

**3.** Schizo-affective schizophrenia is a sub-type of schizophrenia with prominent mood disorder, either manic or depressive. *See Dorland's Illustrated Medical Dictionary* 1177 (26th ed.1985).

115 L.Ed.2d 1079 (1991). Plaintiffs must carry a heavy burden in order for equitable tolling to apply against the government. *See Irwin,* 498 U.S. at 96.

■ The court finds that any disability that Plaintiff suffered during the ninety-day period from July 19 to October 17, 1994, was not severe enough to prevent him from managing his affairs or to prevent him from understanding his legal rights and acting upon them. Courts generally apply equitable tolling for a mental disability only when the Plaintiff has a severe disability that precludes his ability to reason and function in society. *Compare Miller v. Runyon,* 77 F.3d 189, 191–92 (7th Cir.) (stating that because plaintiff could work, attend his affairs, and attend college classes, he would not receive the benefit of equitable tolling), *cert. denied,* —— U.S. ——, 117 S.Ct. 316, 136 L.Ed.2d 231 (1996) *with Nunnally v. Mac-Causland,* 996 F.2d 1, 6 (1st Cir.1993) (holding that material question existed as to whether plaintiff's paranoid schizophrenia, causing hallucinations and "massive disorganization," rendered her incapable of rationally cooperating with counsel or pursuing her claim on her own).

In *Nunnally,* for example, the plaintiff sought to file an employment discrimination claim under the Civil Service Reform Act. The district court dismissed her claim for failure to file in a timely manner. The First Circuit reversed. During all relevant times, the plaintiff was essentially a "street person" who suffered from "paranoid schizophrenia" and "discursive," "illogical," "circumlocutional," and "highly evasive" thought processes. *Id.* at 5. Her condition was described as "crippling and exceedingly disorienting." *Id.*

Plaintiff fails to demonstrate a disability commensurate with that demonstrated in *Nunnally.* Plaintiff concedes, as he must, that he was fully aware of his legal rights. Furthermore, it is undisputed that during the ninety days after receiving notification of final action by the VA, Plaintiff attempted to secure legal representation and began to proceed *in forma pauperis.* From 1994 to 1995, Plaintiff continued to work forty hours per week, make house payments, support himself and pay his bills, request schedule changes to accommodate his college courses, take care of financial matters for his girlfriend, and secure medical treatment for his migraines. (Steele Dep. 81–97, 105–09). Of particular significance is the fact that Plaintiff was able to secure assistance in applying for insurance, Social Security, and disability retirement. (*Id.* at 87, 108–09; Steele Decl. ¶¶ 21, 24, 29, & 30; Government's Ex. C). These activities demonstrate an ability to reason and function in society, and Plaintiff has introduced no expert opinion evidence to indicate the contrary. *Cf. McClamb v. Rubin,* 932 F.Supp. 706, 713 (M.D.N.C.1996) (stating that it is plaintiff's burden to show facts justifying equitable estoppel).

Although Plaintiff was eventually hospitalized in 1995 with schizo-affective disorder, by that time the ninety-day filing period had already expired. Even if Plaintiff's mental condition in 1995 and 1996 may have been at times "incapacitating" and prevented him from acting on his rights, this occurred after expiration of the limitations period and thus constitutes no basis for equitable tolling. *Cf. Miller,* 77 F.3d at 191 (stating that the statute of limitations will be tolled only until the plaintiff is able through exercise of proper diligence to file suit); *Cada,* 920 F.2d at 453 (noting that when plaintiff is able to gather necessary information after the claim arose, but before the statute of limitations has run, the presumption is that plaintiff is able to bring suit within the statutory period). Under these circumstances, the court finds that Plaintiff has not carried his burden of demonstrating a mental disability significant enough to toll the limitations period.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted, and the case will be dismissed.