Rogers v. Marino, et al.          CV-96-303-M    08/26/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Charles F. Rogers,
        Plaintiff

v.                                          Civil No. 96-303-M

Mark Marino and
Michael Licata,
        Defendants


**O R D E R**

Plaintiff, Charles Rogers, brought this civil action pursuant to 42 U.S.C. § 1983 and New Hampshire common law, claiming that defendants employed excessive force when they arrested him on August 14, 1993.  He also claimed that while he was in their custody, defendants were deliberately indifferent to his serious medical needs.  Finally, plaintiff brought a state common law claim against defendant Marino asserting that Marino had defamed him.  The matter was tried to a jury in June of 1998. At the close of plaintiff's case, the court granted defendant Marino's motion for judgment as a matter of law with regard to plaintiff's defamation claim.  The jury deliberated briefly before returning a verdict for defendants on all of plaintiff's remaining counts.

Pursuant to 42 U.S.C. § 1988, defendants now move the court for an award of reasonable attorneys' fees and costs, asserting that plaintiff's claims were frivolous, unreasonable, and/or

without foundation. They seek fees in the amount of $43,086.00 and costs in the amount of $4,338.91. Plaintiff objects.

## Discussion

I. The Applicable Standard.

42 U.S.C. § 1988 authorizes the court, in its discretion, to award attorneys' fees to a prevailing party in a civil rights case. As to a prevailing defendant, the court may award fees if it concludes that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). See also Hughes v. Rowe, 449 U.S. 5, 14 (1980) (noting that for defendants to be eligible for an award of attorneys' fees in a § 1983 action, "plaintiff's action must be meritless in the sense that it is groundless or without foundation."). But the court must be mindful, however, that the "standard for a civil rights defendant to receive fees is high to encourage legitimate civil rights claims." Ward v. Hickey, 996 F.2d 448, 455 (1st Cir. 1993).

II. An Award of Attorneys' Fees is Warranted.

As noted above, defendants plainly prevailed with regard to plaintiff's § 1983 claims. But the court must determine whether those claims were "frivolous, unreasonable, or without foundation." Hughes, 449 U.S. at 14. Here, the court has little difficulty in concluding that plaintiff's claims, although

2

perhaps brought in subjective good faith (in the sense that plaintiff seemed to be genuinely confused and often unable to distinguish between what happened, what he thought he remembered, and what he merely imagined), were frivolous, unreasonable, and without foundation from their inception. See Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1192 (1st Cir. 1996) (noting that "for a claim to be 'frivolous' under § 1988, it must be frivolous when originally raised in the district court.").

At trial, plaintiff failed to produce any evidence (other than his own uncorroborated, incredible, and overwhelmingly contradicted testimony) that defendants used excessive force in effectuating his arrest or that they were deliberately indifferent to any of his allegedly serious medical needs in the moments following his arrest. In fact, the witnesses to plaintiff's arrest all testified that plaintiff was unruly, disruptive, and combative but that defendants displayed remarkable professional restraint and patience in dealing with him (despite the fact that plaintiff kicked and painfully injured one of the arresting officers). And, despite plaintiff's claims that the arresting officers employed so-called "iron claw" handcuffs in an effort to subdue him, he introduced no evidence to support that claim.[1]

---

[1] At trial, plaintiff introduced (without objection) an "iron claw," which he claimed was similar to the one that the officers had allegedly applied to his arm in an effort to inflict pain and induce him to cooperate in their efforts to subdue him. The device appears similar to a single handcuff, designed to be

While plaintiff no doubt believes that the officers employed the "iron claw" and deliberately sought to inflict unnecessary pain upon him, that belief has no basis in fact and is at best fanciful or delusional. In light of the evidence produced at trial, it is clear that plaintiff's § 1983 claims were frivolous, unreasonable, and without foundation or merit. Accordingly, as the prevailing party with regard to those claims, defendants are, in the court's discretion, entitled to a reasonable award of attorneys' fees.

III. Calculating the Lodestar.

Having found that an award of attorneys' fees is justified under the statute, the court must now determine whether the sum requested is "reasonable." In this circuit, the preferred method of calculating fee awards under 42 U.S.C. § 1988 is the "lodestar method," by which "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate." Coutin

racheted tightly over a person's wrist or forearm. If used, there is little doubt that it could inflict substantial pain. However, plaintiff failed to link that device to the defendants and it is unclear how (or even where) plaintiff came into possession of that device. It is, however, clear that it did not come from the defendants. In the end, plaintiff introduced no evidence (other than his own testimony that he felt something tighten on his arm when it was behind his back and, some days or weeks after the incident, concluded that it must have been an "iron claw") from which a reasonable trier of fact could possibly conclude that defendants ever employed that device, or one similar to it. Perhaps more importantly, plaintiff introduced no evidence from which a reasonable trier of fact could possibly conclude that defendants used anything even approaching excessive force when they took him into custody. By all accounts, save his own, defendants' conduct was professional, admirable, effective, and, under the circumstances, compassionate.

4

v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 305 (1st Cir. 1995).

Defendants bear the burden of providing sufficiently detailed contemporaneous records of the time spent and tasks performed to allow the court to determine their reasonableness. See Tennessee Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994). Defendants have met that burden by submitting comprehensive records detailing the effort expended by their legal counsel. They have also filed an affidavit from Attorney William Scott in support of their petition for costs and attorneys' fees.

Records submitted by defendants' counsel document the following:

a. 264.40 hours of work performed by Attorney William Scott (a partner at Boynton, Waldron, Doleac, Woodman & Scott), customarily billed at $120 per hour;[2]

b. 112.50 hours of work performed by associates in Attorney Scott's office, customarily billed at $85 per hour; and

c. 39.90 hours of work performed by a paralegal, customarily billed at $45 per hour.

---

[2] Attorney Scott has represented in his affidavit that he customarily charges clients $150 per hour. However, when (as in this case) he is representing municipalities, he charges a reduced rate of $120 per hour. It is at that reduced rate that Attorney Scott seeks reimbursement.

Defendants have met their burden of submitting detailed material supporting their request for attorneys' fees totaling $43,086.00. Additionally, defendants have submitted documentation supporting counsel's expenditure of $4,338.91 in costs.

Although plaintiff generally objects to any award of costs or attorneys' fees, he has not challenged the hourly rates charged by any of the attorneys or the paralegal who provided legal services to defendants in this matter. Nor does plaintiff claim that any work provided by defense counsel was unnecessary or excessive. In the absence of an objection by plaintiff, and crediting defendants' submissions, the court finds that the hourly rates charged by defense counsel for each of the attorneys and the paralegal who worked on this matter are reasonable and consistent with those customarily charged by practitioners of comparable skill and experience in New Hampshire. See Andrade, 82 F.3d at 1190 ("In determining a reasonable hourly rate, the Supreme Court has recommended that courts use 'the prevailing market rates in the relevant community' as the starting point."). See also Affidavit of Attorney Scott at paras. 7-8.

After carefully reviewing the submissions by defense counsel, the court concludes that the fees charged (and, concomitantly, the number of hours worked) by defense counsel are reasonable and appropriate in light of the complexity of this case, the qualifications of counsel, the volume of work performed

6

by counsel and his staff, and the ultimate resolution of this matter. See generally, Hensley v. Eckerhart, 461 U.S. 424, 433-37 (1983); In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 305 (1st Cir. 1995); Grendel's Den, Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984). Accordingly, pursuant to 42 U.S.C. § 1988, defendants have justified their request for an award of $43,086.00 in attorneys' fees and $4,338.91 in costs.

IV.   Equitably Adjusting the Award.

After a district court has calculated the lodestar for a prevailing defendant, it may, in its discretion, reduce that amount after considering plaintiff's financial condition. See Andrade, 82 F.3d at 1193 (citing Charves v. Western Union Tel. Co., 711 F.2d 462, 465 (1st Cir. 1983)). Here, plaintiff proceeded to trial pro se and in forma pauperis. He claims to be totally and permanently disabled and receives veteran's disability income of $926 per month. He claims to have no other means of support. And, aside from approximately $750 in cash and various items of personalty worth less than $2,000, plaintiff says he has no assets. See generally plaintiff's motion to proceed in forma pauperis (document no. 121) and plaintiff's financial declaration (document no. 122).

An award of attorneys' fees should fulfill the deterrent purpose of § 1988, still, such an award should not subject the

7

plaintiff to financial ruin.  See Andrade, 82 F.3d at 1193.
Accordingly, the court concludes that plaintiff should not be
compelled to fully reimburse defendants for all costs and
attorneys' fees incurred in this matter.  Accordingly, the court
reduces the amount for which plaintiff is liable to $5,000.00.

Considering plaintiff's limited financial resources, his
apparent inability to secure gainful employment, and the
deterrent effect sought to be obtained through an award of
attorneys' fees, the sum of $5,000.00 would appear to be an
appropriate award.  While it is certainly substantially less than
the amount to which defendants would otherwise be entitled, it is
an amount which plaintiff should be able to pay, over time,
without suffering financial ruin and, equally important, it is
sufficiently large to give this plaintiff and other potential
plaintiffs with similarly baseless claims substantial pause
before initiating litigation in the future.

## Conclusion

In light of the foregoing, defendants' motion for an award
of attorneys' fees (document no. 136) is granted in part and
denied in part.  Defendants are entitled to an award of
reasonable fees and costs pursuant to 42 U.S.C. § 1988, as
plaintiff's § 1983 claims were exposed at trial as plainly
frivolous, without foundation, and meritless from inception.

8

However, in light of plaintiff's impecunity, the court reduces the amount of that award from the lodestar figure to $5,000.00.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

August 26, 1998

cc:   Charles F. Rogers
      William G. Scott, Esq.